## RICHARDS et al. v. CITY OF BOSTON.
### No. 260.

District Court, D. Massachusetts.
May 28, 1930.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for plaintiff.

H. Murray Pakulski, of Boston, Mass., for defendant.

MORTON, District Judge.

This is a suit to recover for injuries done to the tug Saturn by a collision with the North Chelsea drawbridge over the Mystic river. The undisputed facts are as follows: On the morning in question the Saturn had been assisting the steamer Thurlow to get out of the Everett docks. This had been accomplished, and the steamer was proceeding down the river under her own power, the tug following behind. Capt. Cunningham, master of the Saturn, was on the Thurlow acting as harbor pilot. There was no other licensed man in the deck force of the tug, and she was in charge of a deck hand, Greenwood, who had the wheel. The Thurlow took the right-hand, or southern, waterway through the drawbridge; as the assistance of the Saturn might be necessary to push on the bow of the Thurlow after she had cleared the draw, the tug put on speed and started through the left-hand or northerly waterway. While she was in the waterway the draw was suddenly swung out in front of her. Greenwood put the helm of the tug hard astarboard and rang for full speed ahead in an effort to turn her to port as sharply as possible. She came into contact with the draw; it carried away her foremast, broke one or more of the stack stays and canted the stack over to port, and bent inboard the forward davits on the starboard side. Eventually the tug got around the end of the draw and proceeded. So far the facts are not in controversy.

Beyond this the testimony is widely at variance. The account given by the witnesses for the tug is that she was proceeding on her starboard side of the waterway about twenty-five feet from the draw pier; that without any necessity or excuse therefor, the draw was suddenly swung out in front of her gravely endangering her; and that in the emergency thus created Greenwood's manoeuver of putting on speed and turning as sharply as possible to port offered the best chance to escape or minimize injury. For a general statement of law applicable, see Greenwood v. Westport (D. C.) 60 F. 560 and Van Etten v. Westport (D. C.) 60 F. 579.

The witnesses for the city, who were for the most part employed in connection with the draw, say that a large tanker the Agwi Lake, was going through just ahead of the Thurlow; that as this tanker emerged from the waterway another vessel, the Fletcher, was coming up bound into Mystic river and across the bow of the tanker; that this caused the latter to reverse her engine; that thereupon the Thurlow also reversed while still in the waterway and moving slowly ahead; that this action caused her stern to move to port, towards the draw pier; that the overhang of the stern threatened to sweep along above the draw pier and injure the draw itself; that to avoid this the draw was swung out a few feet, and this movement caused the accident to the Saturn. These witnesses say also that the Saturn came into the North waterway well over on the north or Chelsea side; that Sullivan, a member of the Saturn crew, who would ordinarily have taken charge of her in the absence of her master, had missed the tug that morning and was waiting on the pier of the draw to be picked up by the Saturn; that he signaled to her from the pier and she headed across toward it apparently to take him aboard; that as she approached him he noticed the draw starting to swing in front of her and signaled to her to keep back, but that she kept on and ran into the draw, brushing along the side of it and receiving the injuries above stated.

The engineer of the tug, Simmons, says that she was running under one bell, and her speed in the waterway was about seven knots per hour; that he received no signal to reduce it, and did receive one for full speed

ahead. The witnesses for the defendant also say that the tug was proceeding at a good pace and did not slow before the collision.

The faults urged against the tug are (1) that she was proceeding without any licensed navigating officer on board; and was in charge of an incompetent man; (2) that she took the port waterway instead of the starboard one; (3) that she did not try to stop when she saw the draw swing out, instead of going ahead; and (4) that the cause of the accident was that she came across to pick up Sullivan on the draw pier and executed the movement at too great speed.

 While the fact that a vessel is in charge of an unlicensed man raises a natural doubt as to the skill with which she was managed and is evidence of negligence, it is not of itself negligence. The violation of law does not make her an outlaw or a trespasser. The question still remains whether her conduct was proper under the circumstances. Greenwood had had between four and five years experience as a deck hand. There is no evidence that he had shown himself incompetent or was so regarded before the accident. In the emergency created by the sudden movement of the draw against him he appears to have acted competently and skillfully. The speed of the tug was too great and the draw too near when it started to swing for him to have avoided injury by reversing the engine. Such a maneuver would have thrown the head of the tug into the approaching draw. There is no doubt that in ringing for full speed ahead and throwing his wheel hard over he took the best course open to him. This disposes of the first and third faults charged against the tug. As to the second, the Saturn was not negligent for taking the port water way. She might rightfully do so, provided she did not embarrass approaching vessels which desired to use it. There was nothing of that sort in this case. Moreover, she had ample justification for taking the North waterway because she was hurrying past the Thurlow in order to be in position to assist the latter, if necessary, to make a short turn. Her speed would have been all right if the draw had not been moved. The presence of Sullivan on the draw pier had nothing to do with the accident. On all the evidence I find that the tug was free from fault.

 The case turns on whether the draw tenders were at fault for moving the draw, or whether it was a pure accident for which nobody is to blame. If the movement of the draw was necessary in order to avoid damage to it by the Thurlow, in my opinion the draw tenders were not at fault for swinging it out of her way, although their doing so might imperil the tug to some extent. They were bound to consider that the draw constituted a link in an important highway system in the approaches to Boston, as well as an obstruction when closed to an important part of the harbor. It was greatly in the public interest that it should be preserved from an injury which might render it inoperative. If faced with the alternative of leaving the draw in position to receive a damaging impact of the Thurlow, or of swinging it to avoid the blow, I am not prepared to say that acting in the emergency the draw tenders were negligent in choosing the latter alternative.

The question really is whether they were faced with this alternative. Capt. Cunningham of the Saturn, Capt. Jackson of the Thurlow, and Walter L. Snyder, second officer of the Thurlow, who were in good position to observe how close she came to the draw pier, all say that she never touched it and did not threaten the draw, and that there was no occasion to swing the draw to avoid that danger. The plain inference from their testimony is that the accident happened because those in charge of the draw, not having noticed or having forgotten the Saturn, started to close the draw after the Thurlow as she passed through. This view is greatly strengthened by the testimony of Selari who was operating the draw. He says that it was the custom in closing the draw to swing it as close behind the vessel going through as could be done without endangering her; that when the Thurlow was clear of the draw he started to swing it after her; that there was a lot of highway traffic waiting to use the bridge and he wanted to get it closed as soon as he could; that he had not seen the Saturn at the time when he started to close the bridge; and that the first he saw of her was when her stack was canted over by contact with the draw. There is in this no suggestion of balancing between the danger to the draw threatened by the Thurlow, and the danger to the tug which would be occasioned by a movement of the draw; the tug was overlooked. Moreover, there are certain inconsistencies in the testimony of the defendant's employees with respect to the position of the Thurlow in the waterway at the time when, as they say, she threatened to hit the draw, and certain difficulties in seeing how the movement of the draw would have been helpful in avoiding the danger described. The defendant's witnesses stand on no higher footing than the three men on the Thurlow who testified that at no

time did she make any threat against the safety of the draw; and on all the evidence I am not satisfied that she did so. I think it probable that the movement of the draw was due to an inadvertent oversight of the Saturn, and that it was negligence, causing the injuries complained of. On all the evidence I so find and rule.

It follows that the libelants are entitled to full damages.

Decree accordingly.